

# THE ATTORNEY GENERAL
## OF TEXAS

March 29, 1990

JIM MATTOX
ATTORNEY GENERAL

Mr. Kenneth S. Ashworth          Opinion No. JM-1153
Executive Director
Texas Higher Education           Re: Constitutionality of legis-
  Coordinating Board             lation creating Central Texas
P. O. Box 12788                  University  (RQ-1861)
Austin, Texas  78711

Dear Mr. Ashworth:

You ask about the constitutionality of a bill that would, if certain conditions are met, create a four-year institution of higher education in Killeen to be known as Central Texas University. Acts 1989, 71st Leg., ch. 1255, at 5058 (new Educ. Code ch. 113) amended by Acts 1989, 71st Leg., 1st C.S., ch. 37, at 104. You suggest that the creation of Central Texas University under that statute would violate article VII, section 17, of the Texas Constitution because the legislation was not adopted pursuant to a two-thirds vote of each house of the legislature.[1] We conclude that your argument is based on a misreading of article VII, section 17.

In November 1984 the voters approved a constitutional amendment that dealt mainly with funding for higher education. H.J.R. 19, Acts 1983, 68th Leg., at 6701. The amendment added article VII, section 17,[2] which created the Higher Education Assistance Fund, a funding mechanism for

---

1. House Bill 2853, which became chapter 113 of the Education Code, was passed by the House of Representatives on May 1, 1989, by a voice vote and by the Senate on May 23, 1989, by a vote of 23 yeas and 8 nays. H. J. of Tex., 71st Leg., Reg. Sess. 1241 (1989); S. J. of Tex., 71st Leg., Reg. Sess. 1866 (1989).

2. The previous article VII, section 17, was repealed on Nov. 2, 1982, as proposed by H.J.R. 1, § 3, Acts 1982, 67th Leg., 2d C.S., at 52.

institutions of higher education that are not included in the University of Texas or Texas A&M Systems. It also revised article VII, section 18, to restructure the Permanent University Fund. See generally Public Notice, Proposed Constitutional Amendments, November 6, 1984.

You suggest that the creation of Central Texas University in accordance with chapter 113 of the Education Code would violate subsection (c) of article VII, section 17. Article VII, section 17, provides in part:

> (a) In the fiscal year beginning September 1, 1985, and each fiscal year thereafter, there is hereby appropriated out of the first money coming into the state treasury not otherwise appropriated by the constitution $100 million to be used by eligible agencies and institutions of higher education . . . .

> (b) The funds appropriated under Subsection (a) of this section shall be for the use of the following eligible agencies and institutions of higher education (even though their names may be changed):

> [List of 26 state universities]

> (c) Pursuant to a two-thirds vote of the membership of each house of the legislature, institutions of higher education may be created at a later date by general law, and, when created, such an institution shall be entitled to participate in the funding provided by this section if it is not created as a part of The University of Texas System or The Texas A&M University System. An institution that is entitled to participate in dedicated funding provided by Article VII, Section 18, of this constitution may not be entitled to participate in the funding provided by this section.

> (d) In the year 1985 and every 10 years thereafter, the legislature or an agency designated by the legislature no later than August 31 of such year shall allocate by equitable formula the annual appropriations made under Subsection (a) of this section to

> the governing boards of <u>eligible agencies and institutions of higher education</u>.  (Emphasis added.)

You read subsection (c) as disallowing the creation of any state university except by a two-thirds vote of each house of the legislature. We think, however, that the context and history of article VII, section 17, indicate that subsection (c) is not an absolute limitation on the power of the legislature to create institutions of higher education, but rather is an eligibility standard for participation in the fund established by article VII, section 17. <u>See generally</u> Attorney General Opinion V-31 (1947) (holding that under article III, section 48, of the constitution the legislature has power to provide for institutions of higher education not mandated by article VII).

The general subject matter of article VII, section 17, is the Higher Education Assistance Fund. <u>See generally</u> Attorney General Opinion JM-999 (1988). Subsection (a) creates the fund; subsection (b) lists the existing institutions eligible to participate in the fund; and subsection (d) deals with the allocation of the fund among eligible institutions. In that context, it makes sense to read subsection (c) as setting an eligibility standard for participation in the fund by newly created institutions of higher education. <u>See</u> <u>Brady v. Brooks</u>, 89 S.W. 1052 (Tex. 1905) (constitution should be construed as understood by average voter).

Also, any voter who actually read House Joint Resolution 19 would have read the provisions governing the Higher Education Assistance Fund in conjunction with the proposed revision of article VII, section 18. The proposed revision of article VII, section 18, contained the following language as subsection (c):

> Pursuant to a two-thirds vote of the membership of each house of the legislature, institutions of higher education may be created at a later date as part of The University of Texas System or The Texas A&M University System by general law, and, when created, such an institution shall be entitled to participate in the funding provided by this section [the Permanent University Fund] for the system in which it is created. An institution that is entitled

> to participate in dedicated funding provided by Article VII, Section 17, of this constitution may not be entitled to participate in the funding provided by this section.

Subsection (c) of article VII, section 18, is less ambiguous than subsection (c) of article VII, section 17: the former clearly sets an eligibility standard for access to the Permanent University Fund. The fact that the subsections regarding eligibility for the respective funds appear in corresponding positions in sections 17 and 18 of article VII indicates that the provisions were intended to have equivalent effect. More important, we think that voters reading the entire text of House Joint Resolution 19 would likely have interpreted the two subsections (c) as having equivalent effect.

The legislative history of article VII, section 17, supports the view that subsection (c) sets a standard for eligibility to participate in the fund. The two houses of the legislature, being unable to agree on various points in the amendment to be offered to the electorate, appointed a conference committee to resolve their differences. The conference committee, which ultimately produced the amendment, issued a report analyzing the house version, the senate version, and its own version of the proposed amendment. In the report, the conference committee combined subsection (c) with subsection (b) under the heading "Eligible Institutions." The entry under that heading is "The 26 agencies and institutions listed [in subsection (b)] and any created at a later date with 2/3 vote of the legislature." Conference Comm. Rep., H.J.R. 19, 68th Leg. (1983).

The Texas Legislative Council, which publishes reports on proposed constitutional amendments, described the amendment as dedicating general revenue funds to be used for certain purposes by the agencies and institutions listed in subsection (b). Tex. Leg. Council Info. Rep. No. 84-1: Analyses of Proposed Constitutional Amendment Appearing on the November 6, 1984, Ballot (Aug. 1984). The report went on to state:

> The legislature may add to the list of institutions by a two-thirds vote of the membership, except that institutions within The University of Texas System or The Texas A&M System may not be added.

Neither the description on the ballot nor the explanatory statement prepared by the secretary of state in regard to House Joint Resolution 19 contained any reference to the provision in question. See H.J.R. 19, § 4, Acts 1983, 68th Leg., at 6712 (ballot description); Public Notice, Proposed Constitutional Amendments, November 6, 1984. The omission of any such reference supports the view that subsection (c) was not a significant new restriction on the authority of the legislature, but rather a restriction on eligibility for the newly created fund.

Considering the text and the context of the constitutional amendment in question, and also the explanatory information available to voters, we do not think that voters would have interpreted House Joint Resolution 19 as restricting the legislature from creating an institution of higher education that would not have access to the funds created by article VII of the constitution.

## S U M M A R Y

Article VII, section 17, of the Texas Constitution does not prohibit the creation of Central Texas University in accordance with new chapter 113 of the Education Code, as enacted by the 71st Legislature in the Regular and First Called Sessions.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General